IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.

[3] VÍCTOR VEGA ENCARNACIÓN,

Defendant

CRIMINAL 04-0278 (JAG)

## MAGISTRATE JUDGE'S AND RECOMMENDATION REPORT

I.  Personal Background

On October 7, 2004, Daniel Peralta, another defendant, and the movant, Víctor Vega Encarnación, were charged in a three-count indictment.  Count one charged the defendant with knowingly, intentionally and unlawfully combining, conspiring, confederating, and agreeing together with others, to commit an offense against the United States, that is, to distribute and to possess with intent to distribute multi-kilogram quantities of controlled substances, that is, five kilograms or more of cocaine, a Schedule II, Narcotic Drug Controlled Substance, and one kilogram or more of heroin, a Schedule I, Narcotic Drug Controlled Substance, a violation to 21 U.S.C. § 841(a)(1). A forfeiture allegation was also included.  Count two charged the defendant with aiding and abetting each other, and being aided and abetted by others to the Grand Jury known and unknown, with knowingly, willfully, intentionally, and unlawfully, possessing with intent to distribute, approximately 449.4 kilograms (gross weight) of cocaine, a Schedule II, Narcotic Drug Controlled Substance, and 3.37 kilograms (gross weight) of heroin, a Schedule I, Narcotic Drug Controlled Substance.  Count three charged the defendant with aiding and abetting each other, and being aided and abetted by others to the Grand Jury known and

CRIMINAL 04-0278 (JAG)                              2

unknown, in knowingly, willfully, intentionally, and unlawfully, while on board a vessel subject to the jurisdiction of the United States of America, knowingly and unlawfully possessing with the intent to distribute approximately 449.4 kilograms (gross weight) of cocaine, a Schedule II, Narcotic Drug Controlled Substance, and 3.37 kilograms (gross weight) of heroin, a Schedule I, Narcotic Drug Controlled Substance.  The district of Puerto Rico was the first point of entry where said defendants entered the United States following the commission of aforesaid offense.

Defendant Víctor Vega Encarnación correctly filed a motion to dismiss indictment under Rule 12(b)(2), Federal Rules of Criminal Procedure, on grounds of outrageous governmental misconduct, for disclosure of grand jury minutes, and for pretrial evidentiary hearing on March 23, 2005.  The United States filed an opposition to the motion on April 12, 2005.

In the defendant's motion, he seeks relief based upon the government's misconduct in the use of a cooperating witness, and the subsequent improper use of the judicial process to obtain discovery against the defendant.  He alleges that once discovery is complete, he will have shown that the United States used illegally obtained evidence and perjured testimony before the grand jury that returned the indictment.  The defendant makes reference to the filing of a money laundering indictment against this defendant and its subsequent abandonment by the United States.  He concludes his argument by noting that the informant in this case, Roberto de los Santos Cedeño, drew the defendant into the criminal scheme alleged in the indictment, and supplied him with all of the essential ingredients to complete the scheme, including the recruitment of the other alleged confederates.

The United States replies to these allegations that the defendant requested and coordinated the smuggling of this huge load of narcotics into Puerto Rico.  It alludes

CRIMINAL 04-0278 (JAG)                3

to numerous recorded conversations wherein the defendant is discussing and participating in the coordination of a drug smuggling scheme. It mentions body recordings of meetings in which the defendant participated, surveillances, the seizure of funds provided by the defendant to further the venture, and the seizure of the huge drug load. The government argues that the defense has failed to bring forth any factual predicate or evidence to show that outrageous government misconduct occurred. With this background, and with the scanty showing of the defendant as backdrop, I address the issues presented.

Guided by considerations of justice, and "[i]n the exercise of its supervisory authority, a federal court 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.'" Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988) (citing United States v. Hasting, 461 U.S. 499, 505 (1983)); see also United States v. Williams, 504 U.S. 36, 46-47 (1992). The purpose of exercising the federal court's supervisory power is threefold: to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and as a remedy to deter illegal conduct. United States v. Hastings, 461 U.S. at 505, see United States v. Santana, 6 F.3d 1, 9-10 (1st Cir. 1993).

A federal court, in exercise of its supervisory powers, may dismiss an indictment "if there has been prosecutorial misconduct that actually biases the grand jury in performing its fact-finding function." United States v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989). The United States Supreme Court has provided the applicable standard for determining when dismissal of an indictment is appropriate: "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." Bank of Nova

CRIMINAL 04-0278 (JAG)                4

Scotia v. United States, 487 U.S. at 254; see United States v. Flores-Rivera, 56 F.3d 319, 328 (1st Cir. 1995); United States v. Santana, 6 F.3d at 11.

Even though the Court of Appeals for the First Circuit has indicated that federal courts should be willing to invoke the supervisory powers to secure the enforcement of better prosecutorial practice, it has "repeatedly cautioned that such powers must be used sparingly." United States v. Santana, 6 F.3d at 10; see also United States v. Osorio, 929 F.2d 753, 763 (1st Cir. 1991). In order to warrant dismissal of an indictment, the prosecutorial misconduct "must amount to 'serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process.'" United States v. Vest, 842 F.2d 1319, 1334 (1st Cir. 1988) (citing United States v. Ogden, 703 F.2d 629, 636 (1st Cir. 1983)); see also United States v. Batista, 834 F.2d 1, 5 (1st Cir. 1987) (dismissal of indictment only in egregious circumstances where conduct has crossed over into the realm of misconduct).

In order to warrant dismissal of the indictment for errors in the grand jury proceedings, this court must find that "the errors were prejudicial to the defendant[] such that they influenced the grand jury's decision to indict." United States v. López, 854 F. Supp. 41, 46 (D.P.R. 1994) (citing Bank of Nova Scotia v. United States, 487 U.S. at 250); see also United States v. Malavet, 738 F.2d 13, 16 (1st Cir. 1984) ("A showing of actual prejudice to the accused is required.").

The defense also seeks grand jury testimony. That the grand jury was not presented with substantial exculpatory evidence, of which none appears here, is immaterial to the validity of the indictment. See United States v. Williams, 504 U.S. 36, 45-47 (1992). There is no less a basis for the adequacy of the present criminal charges because there may have been a very active role of an informant in recruiting prospective culprits. Cf. id.; United States v. Calandra, 414 U.S. 338, 343-44 (1974).

CRIMINAL 04-0278 (JAG)                5

It is difficult to ignore the axiom espoused in <u>Calandra</u> that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence...." <u>Id.</u> at 345; <u>Costello v. United States</u>, 350 U.S. 359, 362 (1956); <u>cf.</u> <u>United States v. Maceo</u>, 873 F.2d 1 (1st Cir. 1989). The case before the court does not present some overpowering reason to considering the pretrial dismissal of the charges. One defendant has already entered a plea of guilty. The very nature of the case does not lend itself to the notion that the United States not only created the crime through its informant, but also produced a motherload of cocaine and heroin which the defendant was not otherwise willing to associate himself with. In any event, the particularized need to have the grand jury testimony discovered at this stage is not present in the meager proffer of the defendant. Finally, having read the terse memorandum of law, I am left with a distinct impression that there lies beneath the numerous cited cases a hint of skullduggery from which I will supposedly glean merit in the motion. However, I am also left with an ethereal promise that things will be proven at an evidentiary hearing, a promise which reflects a patently insufficient showing to justify my holding such a hearing, particularly in this circuit where pretrial dismissal based on outrageous government misconduct is unheard of. Outside of rote allegations, there are no facts, I repeat, no facts, in the memorandum filed by the defendant, which allow me to believe that this case is taken out of the heartland of huge, multi-kilo seizures which plague Puerto Rico through the use of foreign, super-mule boat crews and the ghost captains which drive the boats to our shores. I have read the seven published cases cited by the defendant. They either considered dismissal after conviction, refer to evidentiary or non-evidentiary hearings held pretrial reflecting a sufficient showing to require such a hearing, are altogether irrelevant, or refer to dictum. <u>United States v. Twigg</u>, 588 F.2d 373 (3rd Cir. 1978) is the outrageous

CRIMINAL 04-0278 (JAG)                              6

government misconduct case par excellence but there is no showing of a similar nature here. Since this court's supervisory powers over the administration of grand juries is aimed at preventing abuses of the grand jury's power, and the prosecution's conduct yet cannot be characterized as the type of misconduct required to dismiss a valid indictment, even after reading the cases cited by the defendant, the present case does not warrant invoking this court's supervisory powers.

For the reasons discussed above, and the parties having been sufficiently heard by their memoranda, I recommend that defendant's motion to dismiss the indictment under this court's supervisory powers, and seeking other relief, be denied without an evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140 (1985); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 14th day of April, 2005.

                                                                           S/ JUSTO ARENAS  
                                                 Chief United States Magistrate Judge